# THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

RAFAEL ORTÍZ-RIVERA,

    Petitioner,

    v.

NICANOR CARO, et al.

    Respondents.

Civil No. 15-2216 (ADC)

## OPINION AND ORDER

### I.    Introduction

Before the Court is petitioner Rafael Ortíz-Rivera's ("Ortíz" or "petitioner") amended motion to vacate, set aside or correct sentence under 28 U.S.C. § 2254 ("Section 2254"). **ECF No. 20**. The petitioner alleges, in essence, that his conviction for murder, assault and other crimes issued by the Puerto Rico Court of First Instance, ensuing incarceration, and denial of his request for a new trial are erroneous and in violation of his Fifth and Fourteenth Amendment rights, because they are based on the testimony of a witness who later recanted in the subsequent criminal proceedings of two other co-defendants. *Id*. Before the Court is also the Puerto Rico Department of Justice's ("PRDOJ") motion to dismiss Ortíz's Section 2254 petition for failure to state a claim under Fed. R. Civ. P. 12(b)(6). **ECF No. 35**. After a thorough review of the aforementioned motions, related filings, and the record as a whole, the Court **DENIES** both the

PRDOJ's motion to dismiss and the petitioner's motion for habeas relief under Section 2254. **ECF Nos. 20, 35**.

## II.    Procedural background

In a bench trial held by the Puerto Rico Court of First Instance upon the petitioner's waiver of his right to a trial by jury, he was found guilty of murder in the second degree, two counts of serious assault, and violations of Articles 5.04 and 5.07 of the Puerto Rico Weapons Act of 2002, P.R. Laws Ann. tit. 34, §§ 485c, 485f. **ECF Nos. 20** at 1; **35-1** at 1-2. On February 23, 2007, Ortíz was sentenced to 136 years of prison, which the petitioner is currently serving in the Ponce Maximum Security Correctional Complex. *Id*. Ortíz opportunely filed an appeal of his conviction before the Puerto Rico Court of Appeals ("PRCA"). **ECF No. 35-1** at 1-2. Subsequently, the PRCA held the appeal process in abeyance as requested by the petitioner in order for him to pursue a request for a new trial before the Puerto Rico Court of First Instance based on the recantation of José Martínez-Morales ("Martínez"), the main witness against him. Martínez had recanted his testimony at Ortíz's trial in the subsequent criminal proceedings of co-defendant Luis Díaz-Rivera ("Díaz"). *Id.*, **ECF No. 20** at 2-7. Martínez later recanted again in the criminal trial of co-defendant Onix Núñez-Alamo ("Núñez"). *Id*. at 4.

On November 5, 2007, Ortíz filed a motion requesting a new trial before the Puerto Rico Court of First Instance based on Martínez's recantation. *Id*. Said Court construed his motion as

one under both Rules 192 and 192.1 of the Puerto Rico Rules of Criminal Procedure,[1] and held

an evidentiary hearing regarding the same in which Martínez testified, among other witnesses

and case participants. **ECF No. 20-2** at 17-20.

On January 21, 2011, the Puerto Rico Court of First Instance issued an order denying the

petitioner's motion requesting a new trial. *Id.* at 20-30. Ortíz opportunely filed a petition for writ

of certiorari before the PRCA as to the lower court's denial of the motion for new trial. **ECF No.**

**35-2**. In his petition for writ of certiorari before the PRCA, Ortíz argued, in essence, that the

Puerto Rico Court of First Instance had erred in the denial of his request for a new trial in light

of a conviction based on the testimony of a witness that had committed perjury, thus violating

---

[1] Rule 192 of Puerto Rico Criminal Procedure, P.R. Laws Ann. tit. 34 App. II, R. 192, allows for a petitioner to request a new trial "if after the sentence is pronounced, new facts or new evidence are found of a nature tending to establish defendant's innocence." *Id.* Moreover, Rule 192.1 provides that

> [a]ny person who is imprisoned by virtue of a judgment rendered by any Division of the Court of First Instance and who alleges the right to be released because:
> (1) The sentence was imposed in violation of the Constitution or the laws of the Commonwealth of Puerto Rico or of the Constitution and laws of the United States; or
> (2) the court lacked jurisdiction to impose such sentence; or
> (3) the sentence imposed exceeds the penalty prescribed by law, or
> (4) the sentence is subject to collateral attack for any reason, may file a motion, in the part of the court which imposed the sentence, to vacate, set aside, or correct the judgment.

P.R. Laws Ann. tit. 34 App. II, R. 192.1. Rule 192.1 further provides that

> [i]f the court determines that the judgment was rendered without jurisdiction, or that the sentence imposed exceeds the penalty prescribed by law, or that for any reason it is subject to collateral attack, or that there has been such violation of petitioner's constitutional rights as to render it susceptible to collateral attack the court shall vacate it and set it aside and shall order that the petitioner be released, or it shall render a new judgment, or shall grant a new trial, as it may deem proper.

*Id.*

Ortíz's rights under the Fourteenth Amendment and acting "with passion, prejudice, and bias." **ECF No. 35-2** at 2. The PRCA declined to issue the writ of certiorari requested by Ortíz, and he then filed a petition for issuance of writ certiorari before the Puerto Rico Supreme Court, which also denied Ortíz's petition. **ECF No. 20** at 7-8. On November 22, 2013, the PRCA issued its judgment upholding the Puerto Rico Court of First Instance's conviction against Ortíz. **ECF No. 35-1**. He then opportunely filed a petition for issuance of writ of certiorari before the Supreme Court of Puerto Rico as to the conviction, which was denied as well. **ECF No. 20** at 7-8.

On September 2, 2015, Ortíz timely filed a *pro se* petition in the Spanish language for habeas corpus by a person in state custody pursuant to Section 2254 and a motion to appoint counsel. **ECF Nos. 4, 5**. This Court appointed the Office of the Federal Public Defender (FPDO) to represent Ortíz, and ordered the filing of an amended Section 2254 petition in the English language. **ECF No. 7**. On June 2, 2016, Ortíz filed an amended Section 2254 petition, regarding which the PRDOJ filed a response and subsequently an amended answer in compliance with this Court's order holding that the original response was non-compliant with the rules governing Section 2254 litigation. **ECF Nos. 29, 30, 33**. On August 30, 2017, the PRDOJ filed a motion to dismiss under Fed. R. Civ. P. 12(b)(6), to which Ortíz opposed. **ECF Nos. 35, 40**.

**III.    Factual background**

In accordance with First Circuit standards as to habeas petitions under Section 2254, the factual background included herein is drawn from the Puerto Rico Court of First Instance's order

denying the petitioner's request for new trial, the PRCA's order affirming said denial, and the

PRCA's judgment affirming the petitioner's conviction, "supplemented with other record facts

consistent with the [Puerto Rico courts'] findings." *Shuman v. Spencer*, 636 F.3d 24, 27 (1st Cir.

2011) (quoting *Yewboah-Sefah v. Ficco*, 556 F.3d 53, 62 (1st Cir. 2009)). **ECF Nos. 20-2, 35-1, 35-2.**

And, as discussed below, the Court accepts as true all well-pleaded facts and draws all

reasonable inferences in the petitioner's favor when adjudicating the PRDOJ's motion to dismiss

under Fed. R. Civ. P. 12(b)(6). *See Parker v. Hurley*, 514 F.3d 87, 90 (1st Cir. 2008).

The acts upon which the petitioner was convicted occurred in the Campanilla Ward of

Toa Baja, Puerto Rico, in the evening of August 7, 2005, when pastor Walter Montañez ("Mr.

Montañez"), church congregant Ms. Sandra Torres ("Ms. Torres"), and two of her young

nephews were victims of a shooting while they were riding in Mr. Montáñez's car on their way

from Ms. Torres' relative's house in the aforementioned neighborhood. **ECF Nos. 20-2, 35-1, 35-2**. One of the boys was killed; the other boy and Mr. Montañez were seriously injured. *Id.*

At the petitioner's trial, Martínez testified, in essence, that he was a resident of the

Campanilla Ward in Toa Baja, where he lived with his father, and on the night of the

aforementioned events, he had gone out in the neighborhood to buy illegal drugs. Upon

returning from that transaction, he heard gunshots and witnessed three four-track vehicles, one

of which was driven by Ortíz, who was carrying a black rifle and was shouting "stop

motherfucker" at a wine-colored car with broken windows in which Mr. Montañez, Ms.

Rodríguez, and her two nephews were traveling. **ECF No. 35-1** at 13. As he continued walking

to his house, he heard more gun shots and saw that the wine-colored car had crashed into a

fence, after which the men on the four tracks continued to shoot at the car after it had crashed.

As held by the Puerto Rico Court of First Instance in its order denying the petitioner's motion

for a new trial, Martínez

> described in detail how the events occurred, the participation of each one of the
> defendants, the firearms they were carrying, the place where the events occurred,
> with the names of the streets, the motor vehicles involved and the structures and
> adjacent locations. He even made a drawing on the blackboard of the place to
> illustrate his testimony, wherein he indicated the streets, a park, his residence, a
> church; where the car in which the victims were traveling came to a stop after the
> gunshots, amongst other details. His testimony is more detailed than the one
> contained in his sworn statement of the 31st of January of 2006. He had no
> uncertainty in identifying the petitioner, whom he knew as "Poetita," and whom
> he described as a handsome person. On two occasions he pointed at him,
> spontaneously, without waiting for the [p]rosecutor's question for identification.
> He assured that he knew the petitioner's father as well as the petitioner since he
> was a child, because he was raised in the ward. He added that, on one occasion in
> which he came out of jail, he saw him again taking drugs to the point at the ward.
> He described himself as a crack and heroin drug addict on the date of the events.
> He affirmed that the petitioner and Mr. Núñez gave him the drug so that he could
> try it before buying it. He was vigorously cross-examined during 40 minutes. His
> answers display certainty in what he is narrating and with the type of exchange
> with the attorney typical of the witness that does not want to let himself be
> impeached.

**ECF No. 20-2** at 14-15.

Martínez first went to the police to inform having witnessed the aforementioned events

in December 2005, at a time when "he was afraid because he had taken the drug stash that a

person had tossed when he was being intervened with by the police in the Campanilla[ ] Ward."

*Id.* at 15. Martínez then informed the police "that he knew about the murder which had occurred and requested, prior to testifying, that they allow him to kick his habit." *Id.* Consequently, the police procured his admission at a rehabilitation center "so that subsequently he would be able to serve as a witness," and later in a witness protection facility. *Id.* at 21. On January 31, 2006, he gave a sworn statement about what he had witnessed to Mario Torres, the prosecutor in charge of the petitioner's case ("Prosecutor Torres"), and thereafter consistently testified about the same on the following five occasions in criminal proceedings while Martínez was being housed in the witness protection facility: (i) cause-for-arrest hearing "for all the alleged perpetrators;" (ii) the petitioner' preliminary hearings; (iii) co-defendant Díaz's preliminary hearing; (iv) co-defendant Díaz's preliminary hearing on appeal; and (v) the petitioner's trial, which ended in October 2006. *Id.* at 21-22.

In November 2006, Martínez wrote a letter to the parents of the deceased victim asking if they could send him socks and a DVD player while he was living in the witness-protection facility, where he lacked those items. *Id.* at 13. Martínez also informed in that letter that his family had been threatened due to his testimony, and that they wanted him to recant it or they would not help him anymore. Martínez further wrote: "I am not going to change my version and do time for someone else and they were the ones who killed [the victim] because I saw them and of that I am certain." *Id.* In that regard, Martínez's father and sister, who testified as witnesses for the petitioner's defense, both admitted that a truck of theirs had been burned a short time after

Martínez had become a witness for the prosecution in the petitioner's case. *Id*. at 16. Previously, according to Carlos Bonilla, the Police of Puerto Rico Criminal Investigation Corps Agent who was in charge of the petitioner's criminal investigation ("Agent Bonilla"), and Prosecutor Torres, Martínez informed them that an attorney had attempted to visit him at the witness-protection facility, and that the petitioner's father had offered Martínez $500 to change his testimony against the petitioner. *Id*. at 7.

In September 2007—almost one year after the petitioner's trial—Martínez testified in the trial of co-defendant Díaz. *Id*. at 6-8. There, and contrary to what he had testified in the petitioner's trial, Martínez stated, in essence, that when the crimes for which the petitioner had been convicted took place, "he was not at the place of the events, but rather at his house, and that he did not know anything about what happened." *Id*. at 6. He further declared that his testimony at the petitioner's trial had been made up by Agent Bonilla, and that he forced Martínez to memorize it. *Id*. at 7-9. Martínez also testified that Prosecutor Torres "had him arrested by some municipal policemen because he had been absent from a hearing and that [Prosecutor Torres] had threatened him with putting him in jail if he did not testify." *Id*. at 7; *see also* 8-9.

In November 2009, Martínez testified at the trial of co-defendant Núñez. *Id*. at 9-14. As in Díaz's trial, Martínez recanted from his original statement wherein he had identified Núñez as one of the co-perpetrators of the crimes that are the object of this case. *Id*. Specifically, Martínez

testified at Núñez's trial that Martínez was at his house on the day of the events, knew nothing about the facts of the case, and had been forced to testify against the co-defendants by Agent Bonilla and Prosecutor Torres. *Id.* at 10-11. Martínez added that Agent Bonilla and Prosecutor Torres brought him "photographs of the co-defendants, of the vehicle in which the victim was traveling, and they showed him some weapons so that he could identify them." *Id.* at 11. Martínez further stated that Agent Bonilla and Prosecutor Torres had given him money and drugs in exchange for his testimony, he had testified under the influence of drugs at all hearings, and his testimony was from a script provided by Agent Bonilla that Martínez had memorized. *Id.*

However, as noted by the Court of First Instance and reiterated by the PRCA, "no weapon was shown to [Martínez] during [Ortíz's] trial," and yet, "as it arises from the transcript of Mr. Díaz's trial, one of the weapons similar to the one described by Mr. Martínez, and that was linked to the crime, was subsequently seized when [Martínez] had already given his sworn statement and testified at the petitioner's preliminary hearing." **ECF Nos. 20-2** at 27; **35-2** at 4. Furthermore, pastor Montañez's testimony in the petitioner's trial corroborated that of Martínez about the presence of four-tracks at the scene of the crime. **ECF No. 35-1** at 11-12. Specifically, "[pastor Montañez] stated that he was not able to see, but he could hear what he believed was a four track that was behind [them]," and he characterized the sound of four-track

vehicles as unmistakable. *Id.* Martínez's testimony at the petitioner's trial was also corroborated by "the documentary and expert evidence collected, which was duly admitted." *Id.*

Furthermore, Martínez admitted at Núñez's trial that his recantation testimony had arisen around February 2007, after he had left the witness protection facility. **ECF No. 20-2** at 7. Specifically, Martínez admitted that said recantation arose at the office of attorney Jorge Gordon ("Attorney Gordon") in the presence of the petitioner's father, where Attorney Gordon obtained a sworn statement from Martínez and recorded it in a cassette. *Id.* Martínez testified that Attorney Gordon had it recorded in a cassette after he had left the witness-protection facility in February of 2007. *Id.* at 7, 11. That alleged cassette was not part of the evidence presented in the petitioner's trial by any party. *Id.* at 11, 29. Additionally, even though Martínez stated that Attorney Gordon had been his counsel in a contempt case against him, the Puerto Rico Court of First Instance, Bayamón Superior Part, could find no record corroborating the fact of such legal representation. *Id.* at 24.

In order to adjudicate the petitioner's motion for a new trial, the Puerto Rico Court of First Instance held a hearing in which Martínez and other key figures in this matter testified, including Martínez's father and sister, who were witnesses for the defense, as well as Prosecutor Torres. *Id.* at 4. The presiding judge also reviewed the petitioner's trial transcript, that of co-defendant Rivera's trial, and Martínez's testimony in the trial of co-defendant Núñez. *Id.* at 4-5, 5-17. In light of the aforementioned evidence and records, and pursuant to legal standards under Rules

192 and 192.1 of Puerto Rico Civil Procedure, P.R. Laws Ann. tit. 34, App. II, R. 192, 192.1, the

Puerto Rico Court of First Instance denied the petitioner's motion for new trial. *Id*. at 30. It

concluded that Martínez's original testimony against the petitioner had been truthful and

reliable, while his recantation was completely lacking in credibility. *Id*. at 17-30. Specifically, the

Court held that Martínez's "statement at the [petitioner's] trial is a solid one, given in a forceful

manner, which is in contrast with his testimony with his testimonies in the subsequent trials

plagued by evasiveness and contradictions." *Id*. at. 28.

Furthermore, the Court of First Instance held that "the recantation of witness Martínez

has its origin in circumstances which are inherently untrustworthy and provoked by interested

parties." *Id*. at 28-29. It found that

> [W]e are before a witness who is extremely vulnerable and susceptible to
> intimidation. Mr. Martínez was [a] resident of the place where the events occurred,
> a chronic addict, ill with AIDS, and whom his family turned their backs on because
> he had become a witness for the People. In fact, his father and sister were witnesses
> for the defense to contradict the version that the witness provided at the first trial.
> When he was imprisoned in jail he was assaulted, which commonly happens to
> inmates who are identified as "snitches." . . . We are convinced that the motivation
> that Mr. Martínez had for changing his version of the facts are clearly established in
> the letter he wrote to the parents of the victim while he was under the protection of
> the State, as well as in the statements which he made to Prosecutor Torres.

*Id*. at 28.

As mentioned above, the PRCA denied Ortíz's request for writ of certiorari as to the lower

court's denial of the petitioner's request for a new trial. **ECF No. 35-2**. It held that "after

evaluating and carefully pondering all of the evidence based on the motion for a new trial . . . in

an extensive and well founded Resolution, the court of instance judge believes that the motion

[for new trial] was not warranted. We have not found that this determination constitutes a crass

error, has been a biased one, or that prejudice was involved." *Id*. at 7.

Subsequently, as also mentioned above, the PRCA affirmed the lower court's conviction

judgment against the petitioner. **ECF No. 35-1**. The PRCA denied the appeal on all grounds of

alleged errors raised by Ortíz, including not granting him the benefit of reasonable doubt in light

of the evidence, giving credence to Martínez's testimony, finding him guilty, and denying the

request for a new trial in light of Martinez's recantation, among others. *Id*. Pursuant to applicable

legal standards, it held that

> [t]he sentencing court gave Mr. Martínez's testimony full credence, thus
> vanquishing the appellant's presumption of innocence. This appellate court shall
> not intervene with the *a quo* court's assessment of the evidence, given that there is
> in the file before us for our consideration, sufficient grounds to confirm the
> decisions made by the court of instance.

*Id.* at 45. Furthermore, it concluded that "having analyzed the circumstances that surrounded

the retraction of Mr. Martínez's testimony, that culminated in a fragile, weak, and not credible

testimony, Mr. Ortíz's motion for  a new trial is not warranted, as it does not meet the

jurisprudential criteria" that the PRCA cited in its opinion. *Id*. at 55. The Supreme Court of Puerto

Rico denied Ortíz's certiorari petition as to the PRCA's judgment affirming his conviction, as

mentioned above.

## IV.    Legal Standard

### A)    Standard of Review for a Motion to Dismiss Under Rule 12(b)(6)

To survive a Rule 12(b)(6) motion, a non-movant must plead enough facts to "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "The general rules of pleading require a short and plain statement of the claim showing that the pleader is entitled to relief . . . . This short and plain statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Contreras v. Somoza*, 113 F. Supp. 3d 527, 530 (D.P.R. 2015). In evaluating the complaint, a court must accept as true all well-pleaded facts and draw all reasonable inferences in the non-movant's favor. *Parker*, 514 F.3d at 90. However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Iqbal,* 556 U.S. at 678.

To survive a motion to dismiss, a non-movant needs to allege "a plausible entitlement to relief," *Twombly*, 550 U.S. at 559, but he need not "plead facts sufficient to establish a prima facie case" to defeat a motion to dismiss, *Rodríguez-Reyes v. Molina-Rodríguez*, 711 F.3d 49, 54 (1st Cir.

2013). In assessing plausibility, a complaint warrants dismissal if it fails "'in toto to render plaintiff's entitlement to relief plausible.'" *Id*. at 55 (quoting *Twombly*, 550 U.S. at 569 n.14). A well pleaded complaint should not be dismissed even if success on the merits is remote or unlikely. *Twombly*, 550 U.S. at 556.

**B)       Habeas Corpus under 28 U.S.C. § 2254**

A federal court may entertain a petition for writ of habeas corpus, on behalf of a person in custody pursuant to a judgment of a State court, if there is a violation of his or her federally protected rights under Section 2254. It must be opportunely filed pursuant to 28 U.S.C. § 2254(d), and the petitioner must have exhausted the remedies available in the courts of the corresponding state. 28 U.S.C. § 2254(b)(1)(A); *see O'Sullivan v. Boerckel*, 526 U.S. 838, 839 (1999). Under applicable Puerto Rico law, the exhaustion of remedies entails that the prisoner first seek post-conviction collateral relief under Rule Puerto Rico Criminal Procedure Rule 192.1. P.R. Laws Ann. tit. 34, App. II, Rule 192.1. *See Rodríguez v. Warden, Escuela Industrial de Mujeres*, 791 F. Supp. 41, 42 (D.P.R. 1992). Additionally, "a petitioner seeking relief under [section] 2254 must complete at least one full round of post-conviction relief by pursuing the remedy provided by Rule 192.1 all the way to the Puerto Rico Supreme Court." *Martínez-González v. Rodríguez-Madera*, 2013 WL 625312 at *2, 13-cv-1005 (SEC) (D.P.R. Feb. 20, 2013). Alternatively, after pursuing a motion for collateral relief under Rule 192.1 at the lower court, but prior to filing a petition for federal habeas relief, the prisoner shall seek habeas relief under P.R. Laws Ann. tit. 34, § 1741 ("Section 1741").

In that case, the petition for writ of habeas corpus under Section 1741 must be pursued all the way to the Puerto Rico Supreme Court. *Id*.; *see also Pérez Arocho v. Wanders*, 2014 WL 8590091 at *2, 13-cv-1472 (CCC) (D.P.R. Feb. 28, 2014); *González Rivera v. Commonwealth of Puerto Rico*, No. 06-1946, slip. op. at 2 (1st Cir. Aug.1, 2007) ("The availability of other state remedies does not preclude a finding of exhaustion if the petitioner pursued a claim through one complete round of state trial-appellate or post-conviction proceedings").

Furthermore, under § 2254(d), a federal court may not grant habeas relief on claims that have previously been adjudicated by state court on the merits unless the adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established [f]ederal law . . . or resulted in a decision based on an unreasonable determination of the facts in light of the evidence presented in the [s]tate court proceeding." 28 U.S.C. § 2254(d)(1). A "state court decision may be unreasonable if it is devoid of record support for its conclusions or is arbitrary." *McCambridge v. Hall*, 303 F.3d 24, 36-37 (1st Cir. 2002). To find that a state court decision is unreasonable under § 2254(d), a federal court must not merely find that the decision was reached in error, but that "some increment of incorrectness beyond error" has been committed by the state court. *Id*. at 36. "This means that the question is not whether . . . [there was an] error, but whether any error rendered the trial so fundamentally unfair that it violated the Due Process Clause." *Nazario–Báez v. Batista*, 29 F.Supp.3d 65, 68 (D.P.R. 2014) (citing *Kater v. Maloney*, 459 F.3d 56, 64 (1st Cir.2006)); *see Fortini v. Murphy*, 257 F.3d 39, 47 (1st Cir. 2001);

*Reyes v. Puerto Rico*, 977 F.Supp.2d 107, 108–09 (D.P.R. 2013); *Collanzo v. Gerry*, 2010 WL 428960 at *3, 10-cv-009-JL (D.N.H. Jan. 29, 2010).

Moreover, "a determination of a factual issue made by a [s]tate court shall be presumed to be correct. The [habeas] applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see Kitchens v. Smith*, 401 U.S. 847, 91 (1971). Additionally, the Supreme Court has held that state courts are presumed to have adjudicated a petitioner's federal claims on the merits, thus subjecting such claims to deferential review under § 2254(d). *See Johnson v. Williams*, 568 U.S. 289, 133 S.Ct. 1088, 1094-96 (2013). However, as *Johnson* suggests, such a presumption can be rebutted under certain circumstances. *Id*. Moreover, if a state court fails to address one or more of a petitioner's claims, such claims will be reviewed *de novo* by a federal court. *See Ellsworth v. Warden, N.H. State Prison*, 333 F.3d 1, 4 (1st Cir. 2003).

V.     **Discussion**

       **A) PRDOJ's motion to dismiss Ortíz's Section 2254 petition for failure to state a claim under Fed. R. Civ. P. 12(b)(6).**

In its motion to dismiss, the PRDOJ summarizes the standards for dismissal under Fed. R. Civ. P. 12(b)(6), as well as the substantive elements of a petition for habeas corpus under Section 2254. **ECF No. 35** at 3-4. However, as argued by the petitioner in his opposition to the PRDOJ's motion to dismiss, the PRDOJ does not discuss in its motion to dismiss how Ortíz's Section 2254 petition fails to meet the sufficiency-of-pleadings standard under Fed. R. Civ. P.

12(b)(6). **ECF No. 40** at 6. Instead, the PRDOJ avers that "the petitioner has not met his burden established [ ] in order to prevail in his habeas corpus petition" under Section 2254 standards. *Id*. at 13.

In his amended petition, Ortíz provides a brief factual and procedural account of his case before the Puerto Rico Court of First Instance and the PRCA. **ECF No. 20** at 1-8. He then contends, in essence, that Martínez's recantation establishes that he had testified falsely at Ortíz's trial, for which the Puerto Rico Court of First Instance's determination that his recantation lacked all credibility constituted "an unreasonable determination of the facts in light of the evidence presented in the [s]tate court proceeding" under Section 2254. Furthermore, Ortíz avers that his conviction is based on Martínez's perjured testimony, for which his conviction, subsequent incarceration, and denial of his request for a new trial violate the Fifth and Fourteenth Amendments pursuant to Section 2254. *Id*. at 8-10.

In light of the above, the Court hereby holds that the petitioner met his burden under Fed. R. Civ. P. 12(b)(6) to adequately plead a claim under Section 2254 for writ of habeas corpus. 28 U.S.C. § 2254; *Twombly*, 550 U.S. at 559; *Molina-Rodríguez*, 711 F.3d at 54; *Maloney,* 459 F.3d at 64. Accordingly, the PRDOJ's motion to dismiss under Fed. R. Civ. P. 12(b)(6), **ECF No. 35**, is hereby **DENIED**. Nonetheless, the Court has considered PRDOJ's arguments in its adjudication on the merits of Ortíz's amended petition under Section 2254, discussed below.

### B) Adjudication on the merits of Ortíz's Section 2254 petition

Ortíz asserts to be entitled to habeas relief, claiming that his state-court conviction was based on perjured testimony in violation of his rights under the Fifth and Fourteenth Amendments. **ECF No. 20**. He also contends that said rights were violated by the Puerto Rico Court of First Instance's denial of his request for new trial based on allegedly perjured testimony, given that the state court allegedly "focused solely on the issue of the credibility of Martínez's recantation," thus failing to "weigh all the evidence of perjury before it." *Id*. at 9-10.

"It is well established that recantations are generally viewed with considerable skepticism." *U.S. v. Carbone*, 880 F.2d 1500, 1502 (1st. Cir. 1989) (citing *Pelegrina v. United States*, 601 F.2d 18, 21 (1st Cir.1979)); *see also United States v. DiCarlo*, 575 F.2d 952, 961 (1st Cir. 1978). A petitioner who predicates a request for habeas relief on a claim of wrongful conviction and/or denial of new trial based on a witness's post-conviction recantation faces the very heavy burden of establishing clear error "of constitutional magnitude" by the trial court as to its credibility determination and ensuing fact-finding. *Sawyer v. Mullaney*, 510 F.2d 1220, 1221 (1st Cir. 1975); *see also Maloney*, 459 F.3d at 64; *Fortini*, 257 F.3d at 47; *Batista*, 29 F.Supp.3d at 68; *Reyes*, 977 F. Supp.2d at 108–09; and *Collanzo*, 2010 WL 428960 at *3. In that respect, a trial court's factual findings based on credibility determinations warrant strong deference in light of its ability "to

see witnesses face-to-face or to appraise in person their demeanor and inflection."[2] *U.S. v. Guzman-Batista*, 783 F.3d 930, 937 (1st Cir. 2015); *see also Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 573-576 (1985); *United States v. Henderson*, 463 F.3d 27, 32 (1st Cir. 2006); *Davis v. Blackburn*, 789 F.2d 350, 352 (5th Cir. 1986) (underscoring the importance of a trial judge's assessment of a witness's recantation); *U.S. v. Adi*, 759 F.2d 404, 408-409 (5th Cir. 1985). Furthermore, "whether or not a new trial should be granted on the ground of a witness' recantation is a question for the court, and, if there is a sufficient basis for the decision, the trial judge may deny the motion on the ground that the witness' trial testimony, rather than his recantation, is true." 5 *Orfield's Criminal Procedure Under the Federal Rules* § 33:32 (June 2017 Update); *see also Carbone*, 880 F.2d at 1502; *U.S. v. Johnson*, 487 F.2d 1278, 1279-1280 (4th Cir. 1973); *Newman v. U.S.*, 238 F.2d, 861, 862-863 (5th Cir. 1956).

---

[2] In the case at bar, the Court notes that the hearing on petitioner's motion for new trial was held before a judge other than the trial judge of Ortíz, who had retired. **ECF No. 20-2** at 1-5. While this caused initial pause, the record is extremely clear and detailed specifying the evidence examined by the judge from the trial record and the evidence received from testimony of witnesses. *See* **ECF Nos. 20-2, 35-1**. Similarly, the trial judge heard actual recordings of the testimonies presented at petitioner's trial by Martínez, his father and sister, as well as the testimonies of petitioner's aunt and father. The record clearly depicts that the trial judge's determination of credibility, as it relates to Martínez's testimony, is based on a specific and detailed analysis of: the case's factual background; chronology of events; the numerous times that whether in writing or in court, Martínez gave consistent testimony; the chain of events that led Martínez to recant; and Martínez's subsequent testimonies characterized as plagued with evasiveness and contradictions. Further, there was other evidence on record corroborating Martínez's testimony. For example, Martínez not only identified each co-defendant, but described the three different weapons he had seen, one of these, a rifle. **ECF No. 35-1** at 12-15. The trial testimony of Agent Mignalys Caraballo alluded to finding on the scene shells for ammunitions of three different calibers, one of these, a rifle. *Id.* at 15-18. Another witness (Walter Montañez, the pastor), while alluding to the night of the shooting, indicated having not seen four-tracks, but testified to having heard "a four-track that came up behind his car. He recognized it from its unmistakable sound." *Id.* at 11-12.

In the instant case, the question before the Court is whether Ortíz should be granted habeas relief as to his conviction by the Puerto Rico Court of First Instance and his request for a new trial based on said court's finding that the post-conviction recantation by witness Martínez was not credible, and that Martínez's original testimony at trial was truthful. The Court hereby incorporates by reference the factual and procedural summaries above to avoid needless repetition. In essence, the record reveals that upon Ortíz's request for a new trial in light of Martínez's post-conviction recantation, the Puerto Rico Court of First Instance held an evidentiary hearing in which multiple key participants testified, including Martínez, his father, his sister, and Prosecutor Torres. Based on the results of that hearing and an extensive review of trial transcripts, audio recordings of Martínez's testimony, and records, the Puerto Rico Court of First Instance held that Martínez's recantation was entirely lacking in credibility, and that his prior testimony against Ortíz that he consistently gave to investigating agents and prosecutors, that was preserved within an affidavit[3] and several subsequent pretrial court hearings, including in Ortíz's trial, was truthful. The record reflects that Martínez provided consistent and detailed testimony throughout the period of December 2005 (when he first voluntarily appeared febore the P.R. police to inform having witnessed the August 7, 2005 murder) and September, 2007 when he testified at the co-defendant Díaz's trial and recanted his previous testimony. In its adjudication, the Puerto Rico Court of First Instance gave particular weight to what it deemed

---

[3]  Martínez's sworn statement was admitted as Stipulated Exhibit 1 at trial. **ECF No. 35-1** at 6.

to be Martínez's far greater clarity, consistency, and persuasiveness in his prior reiterated testimony as compared to his subsequently recanted one, which was provided after the witness had received threats to his family, the visit of an attorney that tried to reach out to him while at the witness protection program, and having received payment offers if he recanted his testimony. The state court also held that Martínez's recantation was a product of inherently untrustworthy circumstances, and had been provoked by interested parties.

As held by the PRCA, this Court sees nothing in this case's record to doubt the soundness, fairness and correctness of the Puerto Rico Court of First Instance's decision at hand. Thus, the petitioner has failed to meet the heavy burden of establishing by clear and convincing evidence that his conviction and the denial of his request for a new trial were based on any error of fact-finding or law, much less one that entailed a violation of his federal constitutional rights. Accordingly, the Court hereby **DENIES** Ortíz's Section 2254 petition, **ECF No. 20**, including his request for a hearing. "A hearing is not necessary in cases where a [habeas petition] (1) is inadequate on its face, or (2) although facially adequate, is conclusively refuted as to the alleged facts by the files and records of the case." *U.S. v. Carbone*, 880 F.2d at 1502; *see also DiCarlo*, 575 F.2d at 961. As discussed above, the Court deems that although facially sufficient, the record clearly refutes the petitioner's habeas contentions under applicable legal standards.

The Court's decision in the instant case is consistent with multiple other federal-court holdings denying habeas relief where the petitioner has failed to meet his burden under 28

U.S.C. § 2254(e)(1) to rebut the presumption of correctness of the state court's findings as to the lack of credibility of a recantation upon which the petition is based, as well as the truthfulness of the original testimony. *See, e.g., Newman*, 238 F.2d at 862-863; *Carbone*, 880 F.2d at 1502; *Giudry v. Sheets*, 452 Fed.Appx. 610, 613 (6th Cir. 2011); *Welsh v. Lafler*, 444 Fed.Appx. 844, 850 (6th Cir. 2011); *Jones v. Seifert*, 808 F. Supp.2d 900, 921-923 (S.D. W.Va. 2011); *Buari v. Kirkpatrick*, 753 F. Supp.2d 282, 293 (S.D.N.Y. 2010); *Strayhorn v. Booker*, 718 F. Supp.2d 846, 873-875 (E.D.Mich. 2010); *Hanikon v. Board of Prison Terms*, 768 F. Supp. 720, 723-725 (C.D. Cal. 1991).

## VI.    Certificate of Appealability

Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases, a "district court must issue or deny a certificate of appealability ('COA') when it enters a final order adverse to the applicant." To merit a COA, an applicant must make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The applicant must demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Here, in light of the case's particular factual and procedural circumstances, a COA is hereby **GRANTED**.

## VII.    Conclusion

In light of the foregoing: (i) the Puerto Rico Department of Justice's motion to dismiss under Fed. R. Civ. P. 12(b)(6), **ECF No. 35**, is **DENIED**; (ii) Ortíz's petition for habeas relief under Section 2254, including his request for a hearing before this Court, **ECF No. 20**, is **DENIED;** and

(iii) the petitioner is **GRANTED** a Certificate of Appealability. The Clerk of the Court is to

**ENTER JUDGMENT DISMISSING THE INSTANT CASE WITH PREJUDICE**.

       **SO ORDERED**.

       At San Juan, Puerto Rico, on this 28th day of September, 2018.

                  **S/AIDA M. DELGADO-COLÓN**
                  **United States District Judge**